**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| **V.** | § | **CR. No. C-11-398-2** |
| | § | **(C.A. No. C-11-375)** |
| **MIKE AGUILAR,** | § | |
| | § | |
| **Defendant/Movant.** | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Mike Aguilar's ("Aguilar") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. D.E. 40.[1] The government filed its motion for summary judgment and alternatively a response and motion to dismiss. D.E. 50. Aguilar did not file a reply.

As discussed in more detail herein, the Court concludes that Aguilar's claim is subject to dismissal because he validly waived his right to file it. The Court thus **DENIES** Aguilar's § 2255 motion and **DENIES** him a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**II. FACTS AND PROCEEDINGS**

Aguilar was arrested with his co-defendant, Henry Lee Tucker, in March 2011 during a cocaine buy by an undercover officer in Corpus Christi, Texas. D.E. 1.

Aguilar first appeared before a federal Magistrate Judge two days after he was arrested and

---

[1] Docket entry references are to the criminal case.

1

was appointed counsel. Minute Entry March 21, 2011, D.E. 2. The two men were indicted on April 13, 2011, for conspiracy to possess with intent to distribute more than 5 kilograms of cocaine and possession with intent to distribute the same cocaine in violation of 21 U..S.C. §§ 846, 841(a)(1), 841(b)(1)(A). Aguilar alone was charged in a third count for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). He was arraigned less than a week later. D.E. 11.

## A.      Plea Agreement and Rearraignment

Aguilar entered into a written plea agreement with the government and was rearraigned. D.E. 16, Minute Entry May 18, 2011. In exchange for his guilty plea to Count 1 and waiver of appellate and § 2255 rights, the government agreed to dismiss Counts 2 and 3, to recommend that Aguilar receive maximum credit for acceptance of responsibility, and to recommend a sentence within the guideline range. D.E. 16 at ¶¶ 1-2.  Aguilar's waiver of right to appeal and to file a § 2255 motion was specifically set forth in the plea agreement as follows:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. The Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that  28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.  The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

D.E. 16 at ¶ 7 (emphasis in original). The agreement was signed by both Aguilar and his counsel. Id. at 5.

At Aguilar's rearraignment, the Court specifically questioned him under oath to ensure that his plea was voluntary and knowing, and to ensure that he understood and was voluntarily

relinquishing his right to file a § 2255 motion.

> THE COURT: Now, I have got to go over a particular provision in this agreement with you. It appears in paragraph 7 of each agreement there is a waiver of certain rights to appeal. Were each of you aware that that waiver was in your agreement before you signed it?
>
>      \*     \*     \*     \*
>
> DEFENDANT AGUILAR: Yes, sir.
>
> THE COURT: Were you aware that you not only waived your right to directly appeal your conviction and sentence but, also, to collaterally attack your conviction and sentence under a federal statute, 28, United States Code, Section 2255?
>
>      \*     \*     \*     \*
>
> THE COURT: Mr. Aguilar, were you?
>
> DEFENDANT AGUILAR: Yes, sir.
>
> THE COURT: I assume -- correct me if I'm wrong – that each of you discussed this waiver with your lawyer before you entered into this agreement.
>
> DEFENDANT AGUILAR: Yes, sir.
>
> THE COURT: Mr. Aguilar, do you feel like you understand the waiver and how it may affect your rights?
>
> DEFENDANT AGUILAR: Yes, sir.
>
> THE COURT: Do you have any questions you want to ask me about the waiver?
>
> DEFENDANT AGUILAR: Oh. No.
>
>      \*     \*     \*     \*
>
> THE COURT: We have to go into some detail about that waiver as a result of Fifth Circuit decisions where people entered into this very waiver and then turn right around and appeal or are wanting to appeal and they claim they didn't understand the waiver, and we have to be very careful that you do understand what you're doing when you sign a waiver of appeal. It's very common. There's not anything wrong with it. I just want to make sure you know you did it.

D.E. 48 at 9-11.

Aguilar also testified that he understood the plea agreement and had discussed it with his attorney before signing it. Id. at 7-9. It is clear from the foregoing that Aguilar was aware that he waived his § 2255 rights. See FED. R. CRIM. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting a plea).

During rearraignment, the Court further informed Aguilar of the various trial rights available

to him, and Aguilar testified that he understood those rights and understood that if he pleaded guilty, he would be giving up those trial rights. Id. at 17-18.

Consistent with Rule 11 of the Federal Rules of Criminal Procedure, the Court explained to Aguilar the maximum punishment that he might receive. The Court informed him that he faced up to 40 years in prison, a minimum mandatory sentence of 5 years, supervised release of at least four years, a fine of up to $5 million, and a mandatory special assessment of $100. D.E. 48 at 12-13. Aguilar told the Court he understood. Id. at 12. Aguilar agreed with the factual recitation by the government's attorney, except as to the quantity of cocaine. Id. at 23.

**B.     Presentence Investigation Report and Sentencing**

At the conclusion of the rearraignment, the Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report (PSI). D.E. 17. The PSI calculated Aguilar's base offense level as 32 based upon 5.5 kilograms of cocaine. D.E. 23 at ¶ 17. Two points were added due to the seizure of multiple firearms from the office in which the buy took place. Id. at ¶ 18. After credit for acceptance of responsibility, the total offense level was 31. Id. at ¶ 26.

Aguilar had several previous convictions. Id. at ¶¶ 28-30. His criminal history points totaled 4, which placed him in criminal history category III. The resulting guideline range was a term of imprisonment of 135 to 168 months with a statutory minimum sentence of 5 years. Id. at ¶¶ 47-48.

Aguilar's counsel filed objections to the PSI. D.E. 19. Counsel objected to the quantity of cocaine identified as relevant conduct because Aguilar only presented enough money to purchase one kilogram of cocaine, and no other funds were found in a search of his person or his room. At the time of Aguilar's arrest, although additional purchases of cocaine were discussed, only one kilogram was seized. Counsel also objected to the firearms enhancement on the ground that Aguilar did not possess a firearm at the time of his arrest and that the firearms seized belonged to his co-

4

defendant Tucker, in whose office the transaction took place. Id.

The probation officer filed an addendum to the PSI before sentencing, wherein he summarized the objections and responded to them. D.E. 25. The probation officer opposed the objections. Id.

Sentencing was held on August 16, 2011. Minute Entry, Aug. 16, 2011. The government presented testimony from one of the undercover agents. Id. The Court found that relevant conduct included only 1 kilogram of cocaine and adjusted Aguilar's offense level downward to 26. Otherwise, the Court adopted the PSI. D.E. 34. The Court imposed 72 months imprisonment for Count 1 and dismissed the remaining counts. D.E. 33, 29. Judgment of conviction and sentence was entered August 24, 2011. D.E. 33. Consistent with his waiver of appellate rights, Aguilar did not appeal. The Clerk received Aguilar's § 2255 motion on November 21, 2011. D.E. 40. It is timely.

### III.  MOVANT'S ALLEGATIONS

Aguilar raises only one ground for relief. He challenges the 2 point enhancement for use of a firearm in a drug transaction. Id. at 4-5.

In its response, the government argues that Aguilar's present motion is barred by his waiver of § 2255 rights in his written plea agreement. D.E. 50 at 4, 6. For the reasons set forth herein, the Court concludes that Aguilar's motion is barred by his waiver.

### IV.  DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set

aside or correct her sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.    Aguilar's Waiver Was Knowing and Voluntary**

 Aguilar does not claim that he did not know about the waiver, or that his plea is involuntary. Before he pled guilty, Aguilar was informed that his plea agreement included a waiver of his appeal and post-conviction rights to challenge his sentence, and he affirmatively testified that he had discussed the terms of the plea agreement with counsel and wished to waive those rights. See D.E. 48 at 10-12. He had no questions for the Court regarding his waiver. Id. at 12.

Aguilar's sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). In short, Aguilar cannot overcome his testimony at rearraignment that he was willingly giving up his right to challenge his conviction and sentence by appeal or by post-conviction motion to vacate. Because Aguilar understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motion, his waiver is enforceable. See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up).

6

The Court finds that the plea agreement and waiver of § 2255 rights contained therein are valid and enforceable. See United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994). Accordingly, the Court finds that Aguilar's waiver of § 2255 rights bars consideration of the merits of Aguilar's claim.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Aguilar has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Aguilar is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. <u>See</u> <u>Jones</u>, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Aguilar's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 40) is **DENIED**. He is also **DENIED** a Certificate of Appealability.

It is so **ORDERED**.

**SIGNED** on this 25th day of July, 2012.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE